[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS 190, 191, 192, 194 AND 195
The parties, Janet Franco, hereinafter called the mother, and Kenneth Franco, hereinafter called the father, were married in Stratford, Connecticut, in October of 1978. Their marriage was terminated July 7, 1988. At that time, custody of the three children was awarded to the mother with rights of visitation in the father.
There are three children born of this marriage, Jamie was born January 18, 1978, and is 14 years of age; Christopher was born June 6, 1981, and is ten years of age; Nicholas was born March 19, 1984, and is seven years old.
As the court's file readily indicates, the motions before us indicate that at least 95 motions have been filed. In fact, a quick look at the file indicates that the motions in the file are presently up to number 203. The parties, although divorced a long time ago, continue to use this case to interfere with each other's lives. This court will not attempt a detailed recital of prior proceedings but suffice it to say that, at the time of the hearing before this court, the father was not having visitation with any of the children. CT Page 2122
The court listened to the father. The court listened to the mother. The court listened to Ms Goldie Winn from Yale, a counselor, and listened to the family relations officer, Jennifer Louise, to whom this case was referred by this court and by Judge Ballen. Judge Ballen increased the referral to involve the total visitation problem.
These two parents, when taken by themselves, present a picture of flexibility, competency, intelligence and care and concern about their children. Their method of questioning each other and answering each other's questions when they represented themselves in these proceedings pro se indicated that most of that objectivity and concern appeared to be lost. They were doing what they apparently have done over the years which is attempt to one up the other and push the buttons of the other party and exercise some degree of control, one over the other. In fact, the history of the visitation appears to be an attempt by one party or the other to seek control of the other.
This court has taken into consideration all of the relevant statutory criteria and, in particular, Connecticut General Statutes 46b-56 and all of the evidence including but not limited to defendant's Exhibit One, the Yale University report, and defendant's Exhibit Four, the Yale University letter concerning counseling. The court further has listened to the arguments of the respective parties and their claims. The court also considered the claims for relief filed by the attorney for the children.
The court finds that it is in the best interests of the children to have visitation with the father, who the court finds to be a fit parent. The court also finds the mother to be a fit parent.
The court, in an attempt to try to resolve this matter once and for all, will make the following orders:
1. Starting on Saturday, March 14, 1992, the father will have visitation of Jamie from 10:00 a.m. until 2:00 p.m.
2. On Saturday, March 21, 1992, the father will have visitation of Christopher from 10:00 a.m. until 2:00 p.m.
3. On Saturday, March 28, 1992, the father will have visitation of Nicholas from 10:00 a.m. to 2:00 p.m.
4. On Saturday, April 4, 1992, the father will have visitation of all three boys, Jamie, Christopher and Nicholas, from 10:00 a.m. to 4:00 p.m. CT Page 2123
5. The above four cycles will be repeated again starting on April 11, 1992. So that visitation on April 11 will be the same as visitation on March 14, April 18 will be the same as March 21, April 25 will be the same as March 28 and May 2 will be the same as April 4.
6. At the conclusion of the May 2nd visitation, this matter shall be referred to the family relations office for evaluation and report. Both the mother and father are to cooperate with the family relations office and so are the children. The visitation, however, shall continue in the same fashion as set forth above while the family relations office is doing the evaluation. In the unlikely event that the parties are satisfied with this, they need not go to the family relations office for evaluation until a problem arises.
7. The mother shall drop off the child or children at the husband's home at 10:00 a.m. sharp. The husband shall return the children, where he has the individual child, by 2:00 p.m. sharp to the mother at her home and where he has the three children by 4:00 p.m. sharp at her home.
8. Neither of the parties shall take the law into their own hands concerning any violations of this schedule. By that this court means that, if the father is late, the visitation for the next period is not to be terminated and, if the mother is late, it does not mean the father may bring the children back late. (These are by way of example not limitation.) Both parties should note that and bring that to the family relations office's attention. It is suggested that the parties use some clock that they synchronize with each other so that the visitation time does not fall into "my clock said different than your clock said."
9. Since the parties have demonstrated to this court that they are not flexible, this visitation schedule is not to be changed. Mother is to make sure that the children visit with their father, and the father is to clear his schedule so that he is available for the visitation. This court has opted not to do mid week visitation since it seemed that that was a problem that could be avoided by the weekend visitation.
10. This court further terminates any requirements concerning counseling since it is apparent that it is just another forum for the parties to exercise control. Counseling at this time is valueless since neither of the parties are CT Page 2124 willing to recognize that there are any problems that either one of them has that need addressing. Rather, they are there trying to convince counselors and others that they are fine and that the counselor should see it their way.
This court has determined that it is in the best interests of the children to visit with their father in order that they may understand the role of their father in their lives. The presence of an adult male in their life is something that they should understand so that they may, at some time in the future, have a father that they can turn to with the problems that young boys have which need expression with a father. Further, that they may also understand the role that a father plays in their life so that they may carry that role into their later life.
The mother remarried after the dissolution of marriage. She was faced thereafter with the death of her husband and she is now a widow so there is no permanent male figure in her life.
The children need a relationship with their father in addition to the excellent relationship they have with their mother.
Accordingly motion number 190.00 is denied, motion number 191.00 is denied, motion number 192.00 is denied, motion number 194.00 is overruled, and motion number 195.00 is overruled. In addition, Attorney Rosenberg's oral motion to withdraw as attorney for the children is granted.
EDWARD R. KARAZIN, JR., JUDGE